IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GRETCHEN M. DENARO, | ) CASE NO. 1:23-CV-01532-CAB |
| | ) |
| Plaintiff, | ) JUDGE CHRISTOPHER A. BOYKO |
| | ) |
| v. | ) |
| | ) MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) CARMEN E. HENDERSON |
| | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendant, | ) |

**I. Introduction**

Plaintiff, Gretchen M. Denaro ("Denaro" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

**II. Procedural History**

On June 14, 2021, Claimant filed applications for DIB and SSI, alleging a disability onset date of September 30, 2019. (ECF No. 7, PageID #: 43). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On July 1, 2022, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.*). On July 19, 2022, the ALJ issued a

written decision finding Claimant was not disabled. (*Id.* at PageID #: 43-55). The ALJ's decision became final on June 6, 2023, when the Appeals Council declined further review. (*Id.* at PageID #: 29).

On August 7, 2023, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 9, 11, 12). Claimant asserts the following assignments of error:

> (1) The ALJ erred at Step Two of the Sequential Evaluation when she failed to properly apply the criteria of Social Security Ruling 96-8p and consider all of Plaintiff's impairments and related limitations when forming the RFC.
>
> (2) The ALJ erred when she improperly assessed the opinions of the treating sources and failed to support her conclusions with substantial evidence.
>
> (3) The ALJ committed harmful error when she failed to properly apply the criteria of Social Security Ruling 16-3p and failed to find that the intensity, persistence and limiting effects of Plaintiff's symptoms precluded her from engaging in substantial gainful activity on a full-time and sustained basis.

(ECF No. 9 at 1).

## III. Background

### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> The claimant originally alleged disability due to depression and type II diabetes (Exhibit 3E). At the hearing, the claimant alleged that she is primarily limited in her ability to work due to depression and fatigue. She alleges that she cannot complete a normal 40-hour workweek. The claimant alleges limitations in her ability to comprehend, in her memory, and her ability to get long [sic] with others.

(ECF No. 7, PageID #: 49).

### B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

> [T]he claimant has a history of treatment for mental impairments dating back to before the alleged onset date, including a hospitalization in September 2017 for

2

suicidal ideation (Exhibit 14F at 5). On follow-up in October 2018, the claimant reported that she was compliant with medications since her previous hospitalization a year prior and reported no suicidal episodes (Exhibit 14F at 15).

The claimant continued to experience periodic feelings of helplessness and worthlessness; however, she was better able to cope with these feelings and not letting them affect her functioning (Exhibit 14F at 26). She reported somewhat improved mood (Exhibit 12F at 76, 83, 90, and 95). However, in November 2019, the claimant was feeling overwhelmed and exhibited difficulty taking responsibility for her actions (Exhibit 8F at 21). The following month, the claimant reported increased depression after losing her job and when she was unable to find a new one (Exhibits 6F at 23 and 14F at 20).

The claimant continued to report low energy and little interest in seeing others (Exhibit 8F at 33). However, she was not always compliant with medications (Exhibit 8F at 39). The claimant reported in October 2020 that she was feeling isolated during the pandemic; however, she was spending time with her nephew and his young children (Exhibit 9F at 4 and 7). The claimant also reported taking online classes for medical coding and billing (See also Exhibit 9F at 9). She reported some feelings of inadequacy (Exhibit 9F at 10). However, followup treatment records note that the claimant was able to control her ruminating thoughts, but was having flashbacks from childhood trauma (Exhibit 9F at 19 and 21). Follow-up treatment records from January 2021 note some suicidal thoughts after a holiday event (Exhibit 9F at 23). However, with continued treatment and positive response to cognitive behavioral therapy, the claimant's suicidal thoughts decreased (Exhibit 9F at 32). In February 2021, she reported that her medication was helpful and she denied any depression or anxiety (Exhibit 8F at 61).

On follow-up in March 2021, the claimant reported depressed mood for the past week (Exhibit 14F at 36). She was showing some progress with her ability to use cognitive skills to prevent flashbacks resulting in suicidal ideation. She has begun to report increased self-esteem and improved insight. On examination, the claimant was sad with a restricted affect, but she was engaged, alert, and with good eye contact. The claimant was fully oriented and speech was intact. These findings were essentially unchanged on follow-up (Exhibit 14F at 44).

The claimant continued to apply for and seek a job; however, she was not able to secure a job because employers wanted someone with experience (Exhibit 9F at 38 and 41). The claimant was somewhat depressed due to financial concerns as COVID unemployment benefits were ending (Exhibit 9F at 41). In June 2021, the claimant reported that her mood was frequently down with occasional suicidal thoughts; however, these were not strong or persistent (Exhibit 9F at 44). She continued to report fatigue, but was active and helping care for her nephew's young children (Exhibit 9F at 50). Her depression was not worsening (Exhibit 9F at 56). In October 2021, the claimant reported some suicidal ideation (Exhibit 14F at 46).
(ECF No. 7, PageID #: 49-50).

### C. Opinion Evidence at Issue

The opinions of nurse practitioner Yassin Ghanem and counselor Joan Norris are at issue in this appeal.

On February 7, 2022, Ghanem completed a Mental Impairment Questionnaire, indicating that she had been treating Claimant since June 23, 2021 for major depressive disorder and generalized anxiety disorder. (ECF No. 7, PageID #: 1009). Ghanem indicated Claimant had low and depressed mood, appropriate behavior, and coherent thought form. (*Id.*). In assessing Claimant's abilities in various areas, Ghanem indicated Claimant would be "unable to meet competitive standards" in three areas: "complete a normal workday and workweek without interruptions from psychologically based symptoms," "perform at a consistent pace without an unreasonable number and length of rest periods," and "set realistic goals or make plans independently of others." (*Id.* at PageID #: 1009-10). Claimant's abilities in several other areas would be "seriously limited, but not precluded." (*Id.*). According to Ghanem, "flare ups" could cause Claimant to be absent from work or off task for an unknown amount of time. (*Id.* at PageID #: 1010).

On February 15, 2022, Norris also completed a Mental Impairment Questionnaire, indicating she had treated Claimant two to three times per month since October 2018 for recurrent major depressive disorder. (*Id.* at PageID #: 1011). Norris indicated that Claimant had a lengthy history of depression with episodes of suicidal ideation and her prognosis was poor. (*Id.*). Norris rated Claimant's abilities in almost all areas of functioning as either "unable to meet competitive standards" or "no useful ability to function." (*Id.* at PageID #: 1011-12). Norris indicated Claimant had a "poor prognosis to return to workplace." (*Id.* at PageID #: 1012).

### IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

4

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since September 30, 2019, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: depression and posttraumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c))

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: is limited to performing simple, routine tasks, can have frequent interactions with supervisors, co-workers, and the public, and is limited to occasional workplace changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

. . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 30, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(ECF No. 7, PageID #: 46-48, 52-54).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g).

"[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B. Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has

the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises three issues on appeal, arguing that the ALJ erred by (1) failing to consider all her impairments and limitations when forming the RFC; (2) failing to properly assess the medical opinions; and (3) failing to properly apply Social Security Ruling ("SSR") 16-3p in considering Claimant's subjective complaints. (ECF No. 9 at 1).

1. **The ALJ did not fail to account for any limitations in the RFC.**

Claimant first argues that the ALJ erred at step two when she concluded that Claimant had no severe physical impairments based on the State agency evaluations. (ECF No. 9 at 9). Claimant asserts that these evaluations "were prior to the submission of much of the medical evidence in this matter" and the medical evidence "established that Plaintiff's physical issues caused more than a minimal limitation on her ability to engage in basic work-related activities." (*Id.* at 10). Claimant argues that the ALJ erred further when she "failed to consider any effects related to Plaintiff's physical impairments" when forming the RFC. (*Id.* at 11).

The Commissioner responds that the ALJ reasonably found that Claimant's physical impairments were not severe because "the evidence failed to show that [they] significantly limited her ability to do basic work activities." (ECF No. 11 at 9-10). Claimant points to the ALJ's conclusions that "there was no evidence of any end-organ damage or other diabetic complications," Claimant "reported that her stomach pain improved when she decreased her dosage of Wellbutrin," and Claimant's testimony that her disability claim was based on her mental,

7

not physical, impairments. (*Id.*). As to the State agency evaluations, the Commissioner argues the ALJ considered these "in conjunction with the entirety of the record evidence and reasonably found that it would not alter their findings." (*Id.* at 10). Concerning the RFC, the Commissioner argues the ALJ explicitly stated that she considered all the medically determinable impairments but found that they did not further impact her ability to work and Claimant "does not explain what, if any, additional limitations she believes the ALJ should have included in her RFC finding to account for her nonsevere physical impairments." (*Id.* at 11).

"In the Sixth Circuit, the severity determination is 'a de minimis hurdle in the disability determination process." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1998)). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Id.* "The goal of the test is to 'screen out totally groundless claims.'" *Id.* (citing *Farris v. Sec'y of Health & Human Servs.*, 773 F.3d 85, 89 (6th Cir. 1985)). When a claimant "clear[s] step two of the analysis" and the ALJ proceeds to consider the severe and nonsevere impairments in the remaining steps, "[t]he fact that some of [the claimant's] impairments were not deemed to be severe at step two is . . . legally irrelevant." *Id.* (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Such is the case here. The ALJ found that Claimant had severe impairments of depression and posttraumatic stress disorder. (ECF No. 7, PageID #: 46). The ALJ then proceeded through the remaining steps of the sequential evaluation such that Claimant cleared step two, rendering the ALJ's determination that her physical impairments were not severe "legally irrelevant." *Anthony*, 266 F. App'x at 457.

However, "[w]hen formulating an RFC, an ALJ must consider the combined effect of all

8

the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Kochenour v. Comm'r of Soc. Sec. Admin.*, No. 3:14-CV-2451, 2015 WL 9258609, at *6 (N.D. Ohio Dec. 18, 2015) (quotation marks and alterations omitted) (citing *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 388 (6th Cir. 2013)). The ALJ must do so because

> [w]hile a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

*Patterson v. Colvin*, No. 5:14-cv-1470, 2015 WL 5560121, at *4 (N.D. Ohio Sept. 21, 2015) (citations omitted). Said differently, "an ALJ's conclusion that an impairment is non-severe is not tantamount to a conclusion that the same impairment . . . does not impose any work-related restrictions." *Kochenour*, 2015 WL 9258609, at *6 (quoting *Patterson*, 2015 WL 5560121, at *4).

The ALJ specifically explained her conclusion that Claimant's physical impairments did not result in any limitations:

> Robert Klinger, M.D., evaluated the claimant's physical condition based on the evidence of record without examining the claimant on behalf of the Division of Disability Determination (DDD) on September 16, 2021 (Exhibit 1A). Dr. Klinger concluded that the claimant does not have a severe impairment. This assessment was affirmed upon reconsideration (Exhibit 5A).
>
> I find the opinions of the evaluating sources persuasive as they are consistent with the objective evidence of record. For example, they noted that the claimant received treatment for diabetes and gastroesophageal reflux disease (GERD); however, there is no evidence of end-organ damage or other diabetic complications. Treatment records document that the claimant's diabetes is well controlled when she is taking her medications (Exhibit 12F at 14 and 30). However, she is not always complaint with her medications due to reported nausea (Exhibit 12F at 7, 38, and 46). However, her side effects improved with medication adjustment (Exhibit 10F at 9). Therefore, I find that the objective evidence of record documents no more than minimal limitations in the claimant's ability to perform basic work-related

9

      functions as a result of physical impairments. I considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

(ECF No. 7, PageID #: 46).

To dispute this conclusion, Claimant points to a single reference to left shoulder pain, a record documenting uncontrolled diabetes and hypertension, a record containing a discussion of stomach problems, an EKG showing irregular heart rate, a finding of a lung nodule, and a diagnosis of sleep apnea. (ECF No. 9 at 9-10). But, as the Commissioner argues, "the relevant consideration in all disability cases is not a claimant's diagnoses, but her functional limitations." (ECF No. 11 at 10); *see Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 589 (6th Cir. 2019) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."). Despite carrying the evidentiary burden, Claimant wholly fails to point to evidence of any *limitations* she experienced as the result of these conditions. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]"). Because Claimant has not pointed to any evidence in the record to support limitations from her physical conditions, there was nothing additional for the ALJ to consider in formulating the RFC. *Helwagen v. Comm'r of Soc. Sec.*, No. 5:22-CV-01467, 2023 WL 3727253, at *17 (N.D. Ohio Apr. 20, 2023) (noting that where claimant "presented no arguments in support of how or why these non-severe impairments should have altered the ALJ's RFC," substantial evidence supports the ALJ's determination that the impairments did not support a finding of disabled), *report and recommendation adopted*, No. 5:22CV1467, 2023 WL 3726575 (N.D. Ohio May 30, 2023).

      Overall, the RFC accounted for the limitations the ALJ found supported by the record and

substantial evidence supports the ALJ's conclusion.

### 2. The ALJ properly considered the opinion evidence.

Claimant's second argument challenges the ALJ's consideration of opinions from Yassin Ghanem and Joan Norris, both of which the ALJ found not persuasive. (ECF No. 9 at 13). Claimant asserts that contrary to the ALJ's conclusion, the "medical records supported and were consistent with these opinions limiting Plaintiff's ability to perform even her activities of daily living on a sustained basis." (*Id.* at 14). Claimant argues that these opinions from treating sources are "entitled to controlling weight if well supported and not inconsistent with other substantial evidence." (*Id.* at 18). Additionally, Claimant argues that the ALJ failed to discuss her TMS therapy and this failure "along with failing to note the times when Plaintiff's symptoms precluded her activities established that the ALJ's determination was not supported by substantial evidence." (*Id.* at 17).

The Commissioner responds that because the "new medical opinion regulations applicable to this case eliminated the 'treating source rule' requiring deference to treating source opinion evidence," no opinion was entitled to "controlling weight." (ECF No. 11 at 11). The Commissioner argues that the ALJ appropriately considered each opinion, finding Ghanem's opinions "were not supported by or consistent with her own treatment records, which reflected fewer limitations" and Norris's opinion "was inconsistent with her own treatment records." (*Id* at 12). To the extent Claimant cites various evidence to support her position, the Commissioner asserts that such is an improper request for the Court to reweigh the evidence. (*Id.* at 13).

Claimant replies that "contrary to Defendant's contention, the ALJ failed to discuss and consider the factors of supportability and consistency" as required. (ECF No. 12 at 1).

As an initial matter, the Commissioner is correct that the "treating source" rule does not apply here because Claimant filed her application on June 14, 2021 such that her claim is governed

11

by the new regulations set forth in 20 C.F.R. § 404.1520c. Under the new rules, the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. *Id.* Medical source opinions are evaluated using the factors listed in § 404.1520c(c). The factors include supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." *Id.* at § 404.1520c(c). The ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. *Id.* at § 404.1520c(b)(2). Under the regulations, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be" and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c).

> The ALJ provided the following discussion of the challenged opinions:
>
> I have considered the medical opinions of record in rendering this decision. Yassin Ghanem, APRN, completed a questionnaire on February 7, 2022 (Exhibit 16F). Ms. Ghanem concluded that the claimant is unable to meet competitive standards in her ability to set realistic goals or make plans independently of others, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods.
>
> I do not find the opinions of Ms. Ghanem persuasive as they are not consistent with the objective findings in her own treatment records. For example, she noted

12

> improvement in the claimant's mood with treatment (See Exhibit 19F at 53, 112, 184, and 211). Ms. Ghanem noted that the claimant was casually dressed, appropriate, speech was normal, thoughts coherent, and associations intact. Insight and judgment were intact and psychomotor activity normal. Her mood was depressed, but this finding does not support such extreme limitations.
>
> Joan Norris, LISW, completed a questionnaire on February 15, 2022 (Exhibit 17F). Ms. Norris concluded that the claimant has no ability to perform at a consistent pace without an unreasonable number and length of rest periods or accept instructions and respond appropriately to criticism from supervisors. She is unable to meet competitive standards in her ability to respond appropriately to changes in the work setting, be around normal hazards and take appropriate precautions, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, manage regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, or complete a normal workday and workweek without interruptions from psychologically based symptoms.
>
> I do not find the opinions of Ms. Norris persuasive as they are not supported by objective signs and findings contained in her own treatment records. For example, Ms. Norris noted that the claimant's appearance was normal, motor activity within normal limits, speech intact, and thought process within normal limits (Exhibit 3F at 10 and 30). Associations were intact, judgment and insight good, memory intact, attention normal, and fund of knowledge intact. The claimant's mood was also improving and affect normal. The claimant was also focused (Exhibit 13F at 14). Her affect was constricted and mood congruent with affect; however, these findings do not support such extreme limitations (Exhibit 14F at 4 and 9).

(ECF No. 7, PageID #: 50-51).

Based on this discussion, the ALJ properly considered the supportability and consistency factors. As to Ghanem's opinion, the ALJ found it was not consistent with Ghanem's own treatment notes. (*Id.* at PageID #: 50). Despite the use of "consistent," this discussion actually addressed supportability because it pointed to the lack of objective evidence to support the opinion. *See* 20 C.F.R. § 404.1520c; *see also Dallas v. Comm'r of Soc. Sec.*, No. 1:20-CV-1720, 2021 WL 5428827, at *12 (N.D. Ohio Oct. 26, 2021) (finding that the ALJ considered the supportability of an opinion even though he erroneously used the work "consistency"), *report & recommendation*

13

*adopted*, 2021 WL 5416718 (N.D. Ohio Nov. 19, 2021). In support of this conclusion, the ALJ cited Ghanem's records indicating Claimant experienced improvement with treatment through therapy and medication. (*See id.* at PageID #: 1072, 1131, 1203, 1230). The ALJ also noted that Ghanem's treatment notes indicated Claimant was casually dressed with normal speech, coherent thoughts, intact associations, intact insight and judgment, and normal psychomotor activity. (*Id.* at PageID #: 50; *see id.* at PageID #: 1076, 1135, 1207, 1234). Looking at the decision as a whole, it is also clear that the ALJ found Ghanem's opinion inconsistent with other treatment records given that the ALJ noted that "[t]reatment records generally describe the claimant with intact speech, intact associations, and appropriate" with "intact psychomotor activity and associations," normal attention, and focus. (*Id.* at PageID #: 47-48, 52; *see id.* at PageID #: 473-75, 494-96).

Turning to Norris's opinion, the ALJ again found that the opinion was not supported by Norris's own records. (*Id.* at PageID #: 51). The ALJ cited portions of Norris's records indicating Claimant had normal appearance and attention; her motor activity and thought process were within normal limits; she had intact speech, associations, memory, and fund of knowledge; good judgment and insight; and her mood was improving. (*Id.* at PageID #: 51; *see id.* at PageID #: 473-75, 494-96, 949). And, as with respect to Ghanem's opinion, the decision makes clear that the ALJ found Norris's records inconsistent with the record as a whole.

Thus, the ALJ properly considered the supportability and consistency factors in discounting each of these opinions and substantial evidence supports that decision. Because substantial evidence supports the decision, the Court must defer to it, "even if there is substantial evidence that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).

### 3. The ALJ complied with SSR 16-3p in considering Claimant's symptoms.

14

In her third and final argument, Claimant argues the ALJ failed to comply with SSR 16-3p when considering her symptom testimony. (ECF No. 9 at 18). She asserts that the "evidence clearly established that [she] had a combination of symptoms related to her physical and psychological impairments" and the ALJ "erroneously disregarded" this evidence. (*Id.* at 20). Claimant argues that the ALJ "failed to articulate any supportable rationale for her finding that Plaintiff's statements and the evidence . . . were not supportive of the fact that she would be precluded from all types of work." (*Id.* at 21).

The Commissioner responds that the ALJ complied with SSR 16-3p when she concluded that Plaintiff's statements were inconsistent with the objective medical evidence. (ECF No. 11 at 14). The Commissioner cites the ALJ's consideration of Claimant's daily activities and indication that "the record reflected improvement in her symptoms with medication, TMS treatment, and cognitive behavioral therapy, and her mental status examinations reflected overwhelmingly normal findings." (*Id.*). Additionally, the Commissioner asserts that "[a]lthough the ALJ did not fully credit Plaintiff's subjective complaints, she noted that she factored them into her RFC finding" and the "record did not support any further reduction in Plaintiff's residual functional capacity." (*Id.*).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. § 404.1529(c); SSR 16-3p, 2017 WL 5180304.

15

Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider: daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. 2017 WL 5180304 at *7-8. The ALJ need not analyze all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). SSR 16-3p states:

> [I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248–49), *report and recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Here, the ALJ noted Claimant's allegations that she was "limited in her ability to work due

16

to depression and fatigue," could not complete a normal workweek, and had "limitations in her ability to comprehend, in her memory, and her ability to get long [sic] with others." (ECF No. 7, PageID #: 49). The ALJ concluded that while Claimant's medically determinable impairments could cause the alleged symptoms, Claimant's "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the objective evidence of record and other evidence." (*Id.*). The ALJ then proceeded to summarize the medical records. (*Id.* at PageID #: 49-50).

This discussion shows that the ALJ properly considered multiple of the SSR 16-3p factors, including the intensity of Claimant's depression, factors that aggravated her depression, her response to treatment, and her daily activities. The ALJ noted that Claimant had suicidal ideations and experienced feelings of helplessness and worthlessness but was "better able to cope with theses feelings and not letting them affect her functioning." (*Id.* at PageID #: 49). The ALJ noted that Claimant's depression increased after losing her job or when she had financial concerns due to COVID unemployment benefits ending. (*Id.* at PageID #: 49-50). Claimant's suicidal thoughts decreased "with continued treatment and positive response to cognitive behavioral therapy." (*Id.* at PageID #: 49-50). Claimant was "not always compliant with medications" but "reported that her medication was helpful." (*Id.*). The ALJ noted that Claimant spent time with her nephew and his children; took online medical coding and billing classes; and searched for a job. (*Id.*).

Overall, the ALJ considered the relevant factors when assessing Claimant's testimony and found it unsupported by the record. Substantial evidence supports this decision. As the Court does not reweigh the evidence when reviewing an ALJ's decision, no compelling reason exists for the Court to disturb the ALJ's credibility finding. *Cross*, 373 F. Supp. 2d at 732.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: March 22, 2024

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).